CASE NO. 16-1442

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

UNITED STATES, EX REL., ANTONI NARGOL and DAVID LANGTON; STATE OF ARKANSAS, STATE OF CALIFORNIA, CITY OF CHICAGO, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF VIRGINIA, STATE OF WISCONSIN, COMMONWEALTH OF MASSACHUSETTS, CITY OF NEW YORK, STATE OF NEW HAMPSHIRE, STATE OF MISSOURI, STATE OF WASHINGTON, EX REL., ANTONI NARGOL and DAVID LANGTON,

*Plaintiffs-Appellants,*

v.

DEPUY ORTHOPAEDICS, INC.; DEPUY, INC.;
JOHNSON & JOHNSON, SERVICES, INC.,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the District of Massachusetts (Boston)*

## BRIEF OF APPELLEES

Mark D. Seltzer, Esq.
(1st Cir. No. 1127668)
D. Danielle Pelot, Esq.
(1st Cir. No. 1174964)
Hannah R. Bornstein, Esq.
(1st Cir. No. 1174965)

NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Telephone:  (617) 345-1000
Facsimile:  (617) 345-1300

*Attorneys for Defendants-Appellees
DePuy Orthopaedics, Inc., DePuy, Inc.,
Johnson & Johnson, Services, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees DePuy, Inc. (now DePuy Synthes, Inc.), DePuy Orthopaedics, Inc., and Johnson & Johnson Services, Inc., by and through their attorneys, state as follows:

DePuy, Inc., is now called DePuy Synthes, Inc.  DePuy Synthes, Inc., is 100% owned by (parent) Johnson & Johnson International, which is not a publicly held company.

DePuy Orthopaedics, Inc., is 100% owned by (parent) Synthes, Inc., which is not a publicly held company.

Johnson & Johnson Services, Inc., is 100% owned by (parent) Johnson & Johnson, which is a publicly held company.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

INTRODUCTION ...................................................................................... 2

STATEMENT OF THE CASE ........................................................................ 3

SUMMARY OF ARGUMENT ..................................................................... 14

ARGUMENT ........................................................................................... 18

I.     The District Court Correctly Ruled that the Relators' Second Amended Complaint Failed to Satisfy Rule 9(b)'s Pleading Requirements ................. 18

     A.     The District Court Not Only Correctly Ruled that the Relators Failed to Adequately Plead Direct Claims, But the Relators Have Waived Any Argument that Such Claims Were Adequately Pled ................... 19

     B.     The District Court Correctly Dismissed the Relators' Claims that the Defendants Caused Third Parties to Submit False Claims for Payment ........................................................................... 22

          1.     The District Court Correctly Ruled that the Relators' Allegations Regarding Patient F.I. Do Not Constitute a "Claim" for Payment ............................................................. 23

          2.     The District Court Correctly Ruled that the Relators' Allegations Regarding Patient F.I. Do Not Satisfy the Framework Established in *Duxbury* ......................................... 26

               a)     The Relators Failed to Plead Factual Evidence to Strengthen the Inference of Fraud Beyond Possibility ... 27

               b)     The Relators Failed to Plead Statistical Evidence to Strengthen the Inference of Fraud Beyond Possibility ... 31

          3.     The District Court Correctly Ruled that the Relators' Claims of "Total Falsity" Do Not Satisfy Rule 9(b)'s Heightened Pleading Standards ....................................................... 33

     C.     The District Court Correctly Dismissed the Relators' State Law Claims ........................................................................... 37

**TABLE OF CONTENTS (CONTINUED)**

D.   The Relators' Conspiracy Claims Have Been Waived ........................39

II.   The District Court Did Not Abuse its Discretion in Denying the Relators' Informal and Boilerplate Request for Leave to File a Third Amended Complaint ..........................................................................................40

A.   The District Court's Opinion Reflects Adequate Reasons for Denying the Relators' Boilerplate Request for Leave to Amend on the Basis of Undue Delay...........................................................................41

B.   The First Circuit Does Not Require a Separate Finding of Prejudice to Support the Denial of a Request for Leave to Amend Based on Undue Delay...............................................................................................45

III.   The District Court Did Not Abuse Its Discretion In Denying The Relators' Motion for Reconsideration Because the Relators Failed to Explain their Delay in Discovering New Evidence ..........................................................46

CONCLUSION ............................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acosta-Mestre v. Hilton Int'l of P.R., Inc.*,
156 F.3d 49 (1st Cir. 1998)..................................................................43

*Ahmed v. Rosenblatt*,
118 F.3d 886 (1st Cir. 1997)...............................................................41

*Appeal of Sun Pipe Line Co.*,
831 F.2d 22 (1st Cir. 1987)..................................................................47

*Biltcliffe v. CitiMortgage, Inc.*,
772 F.3d 925 (1st Cir. 2014)...............................................................47

*Brown v. Trustees of Boston Univ.*,
891 F.2d 337 (1st Cir. 1989)...........................................................21, 40

*Calderón-Serra v. Wilmington Trust Co.*,
715 F.3d 14 (1st Cir. 2013)..................................................................40

*Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*,
426 F.3d 416 (1st Cir. 2005)...............................................................46

*Fisher v. Kadant, Inc.*,
589 F.3d 505 (1st Cir. 2009)...............................................................46

*Foman v. Davis*,
371 U.S. 178 (1962)............................................................................40

*Grant v. News Grp. Bos., Inc.*,
55 F.3d 1 (1st Cir. 1995)......................................................................43

*In re Lombardo*,
755 F.3d 1 (1st Cir. 2014)...............................................................43, 46

*James v. Watt*,
716 F.2d 71 (1st Cir. 1983)..................................................................44

*Karak v. Bursaw Oil Corp.*,
288 F.3d 15 (1st Cir. 2002)..................................................................48

*LaRocca v. Borden, Inc.*,
    276 F.3d 22 (1st Cir. 2002)...............................................................................41

*Lepore v. Vidockler*,
    792 F.2d 272 (1st Cir. 1986)...............................................................................48

*Nat'l Metal Finishing Co. v. Barclays American Commercial, Inc.*,
    899 F.2d 119 (1st Cir. 1990)...............................................................................46

*New York v. Amgen Inc.*,
    652 F.3d 103 (1st Cir. 2011)...............................................................................37

*Ortega Cabrera v. Bayamon*,
    562 F.2d 91 (1st Cir. 1977)...........................................................................21, 40

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)...............................................................................47

*Pérez v. Hosp. Damas, Inc.*,
    769 F.3d 800 (1st Cir. 2014)...............................................................................45

*Ruiz Rivera v. Riley*,
    209 F.3d 24 (1st Cir. 2000)...............................................................................47

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
    707 F.3d 95 (1st Cir. 2013)...............................................................................44

*Stepanischen v. Merchants Despatch Transp. Corp.*,
    722 F.2d 922 (1st Cir. 1983)...............................................................................43

*Ticketmaster-New York v. Alioto*,
    26 F.3d 201 (1st Cir. 2014)...........................................................................24, 26

*United Sates ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
    579 F.3d 13 (1st Cir. 2009)........................................................................passim

*United States ex rel. Carpenter v. Abbott Labs., Inc.*,
    723 F. Supp. 2d 395 (D. Mass. 2010)................................................................39

*United States ex rel. D'Agostino v. EV3, Inc.*,
    802 F.3d 188 (1st Cir. 2015)........................................................................43, 45

*United States ex rel. Escobar v. Universal Health Servs.*,
    780 F.3d 504 (1st Cir. 2015)........................................................27, 28

*United States ex rel. Ge v. Takeda Pharm. Co.*,
    737 F.3d 116 (1st Cir. 2013)...........................................................passim

*United States ex rel. Goulden v. Bae Sys. Info. & Elec. Sys. Integration*,
    No. 11-12017, 2014 U.S. Dist. LEXIS 109021 (D. Mass. Aug. 7, 2014)..........35

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
    146 F. Supp. 3d 337 (D. Mass. 2015)................................................45

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
    95 F. Supp. 3d 240 (D. Mass. 2015)..................................................32

*United States ex rel. Hutcheson v. Blackstone Med. Inc.*,
    647 F.3d 377 (1st Cir. 2011).............................................................18

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004)...........................................................passim

*United States ex rel. Kelly v. Novartis Pharms. Corp.*,
    827 F.3d 5 (1st Cir. 2016)...............................................................passim

*United States ex rel. Leysock v. Forest Labs, Inc.*,
    55 F. Supp. 3d 210 (D. Mass. 2014) .............................................29, 52

*United States ex rel. Nowak v. Medtronic, Inc.*,
    806 F. Supp. 2d 310 (D. Mass. 2011)......................................34, 36, 37

*United States ex rel. Poteet v. Bahler Med., Inc.*,
    619 F.3d 104 (1st Cir. 2010).............................................................41

*United States ex rel. Rodwell v. Excelitas Techs., Corp.*,
    No. 13-10963, 2015 U.S. Dist. LEXIS 78508 (D. Mass. June 16, 2015) .............
    .......................................................................................19, 20, 21

*United States ex rel. Rost v. Pfizer, Inc.*,
    507 F.3d 720 (1st Cir. 2007)..................................................22, 36, 40

*United States ex rel. Rost v. Pfizer, Inc.*,
    253 F.R.D. 11 (D. Mass. 2008).........................................................39

*United States ex rel. Westmoreland v. Amgen, Inc.*,
    738 F. Supp. 2d 267 (D. Mass. 2010)................................................................33

*United States ex rel. Wilson v. Bristol-Myers Squibb*,
    750 F.3d 111 (1st Cir. 2014).........................................................................41

*United States v. Allen*,
    573 F.3d 42 (1st Cir. 2009)...........................................................................47

*United States v. Rivera*,
    55 F.3d 703 (1st Cir. 1995)................................................................16, 18, 34

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990)..............................................................................44

*Universal Health Servs. v. United States ex rel. Escobar*,
    136 S. Ct. 582 (2015)...................................................................................13

*Universal Health Servs. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016).................................................................................20

*Washington Legal Found. v. Massachusetts Bar Found.*,
    993 F.2d 962 (1st Cir. 1993).........................................................................40

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993).............................................................................25

## OTHER CASES

*In re: DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*,
    No. 1:10-md-02197 ("ASR MDL")..........................................................passim

*In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
    No. 3:11-md-02244 ("Pinnacle MDL")....................................................6, 9, 52

## FEDERAL STATUTES

31 U.S.C. § 3729(a)(1)(A) ..............................................16, 18, 26, 34, 39

31 U.S.C. § 3729(a)(1)(B) ..............................................16, 18, 26, 34, 39

31 U.S.C. § 3729(a)(1)(C) ...............................................................39

31 U.S.C. § 3730......................................................................5

31 U.S.C. § 3730(e)(4)..................................................................................50

**RULES**

Federal Rule of Civil Procedure 9(b)..................................................passim

Federal Rule of Civil Procedure 12(b)(6).........................................12, 43

Federal Rule of Civil Procedure 15(a)......................................................40

Federal Rule of Civil Procedure 59(b).....................................................48

Federal Rule of Civil Procedure 59(e)................................................46, 48

Federal Rule of Civil Procedure 60(b)(2)......................................46, 47, 48

## <u>STATEMENT OF THE ISSUES</u>
## <u>PRESENTED FOR REVIEW</u>

1. Federal Rule of Civil Procedure 9(b) requires that the Relators plead fraud with particularity.  Despite allegations that the Defendants manufactured a defective medical device, the Relators failed to connect those allegations to any claims for payment, as is required under First Circuit False Claims Act precedent.  Should the District Court's decision be upheld when it ruled that the Relators failed to satisfy Rule 9(b)'s heightened pleading standards?

2. Prior to the District Court's decision on the Defendants' motion to dismiss, the Relators failed to proffer any reason as to why they should be permitted to file a third amended complaint.  Further, in connection with their motion for reconsideration, the Relators attached a proposed third amended complaint that contained "new" information that was, in fact, available prior to the initial filing in this case in 2012.  The Relators failed to provide any explanation for their delay in proffering this evidence.  Did the District Court abuse its discretion when it ruled that the Relators unduly delayed in seeking leave to file a third amended complaint?

## **INTRODUCTION**

This is a False Claims Act ("FCA") *qui tam* case brought by two British surgeons ("the Relators") who are expert witnesses in two products liability multi-district litigation ("MDL") actions against DePuy (hereinafter referred to as the "the Defendants" or "DePuy"). The Relators abused their roles as expert witnesses in one of the MDL actions when they used confidential DePuy documents – which they had access to only after signing a confidentiality order agreeing not to disclose the documents outside of the MDL action – to write their First Amended Complaint ("FAC") in this case. After one of the MDL courts criticized the Relators for this conduct and prohibited the Relators from making any further use of confidential DePuy documents in this case, the Relators have failed to move this case forward in conformity with the law of this Circuit.

This appeal comes before the Court after the Honorable F. Dennis Saylor, IV, United States District Judge for the District of Massachusetts ("the District Court") had rejected the Relators' attempts to convert products liability claims into a federal FCA case for their own personal and pecuniary benefit. The Relators' Second Amended Complaint ("SAC") seeks damages relating to the Defendants' manufacture and sale of the Pinnacle metal-on-metal ("Pinnacle MoM") total hip replacement device. On February 2, 2016, the District Court dismissed the SAC for its failure to meet Rule 9(b)'s pleading standards. In so ruling, the District

Court recognized that the First Circuit construes Rule 9(b) "fairly strictly" in order to avoid "parasitic" claims. The District Court also denied the Relators' boilerplate request for leave to file a third amended complaint on the grounds of undue delay. On April 11, 2016, the District Court denied the Relators' motion for reconsideration as to the denial of the Relators' request for leave to amend, finding that the Relators had proffered no appropriate explanation as to why they had failed to conduct reasonable and timely diligence to ascertain the "newly discovered" evidence alleged in their proposed third amended complaint. The Relators appeal the District Court's decisions.

## STATEMENT OF THE CASE

### I.     BACKGROUND

#### A. The Pinnacle Metal-on-Metal Device

DePuy is a medical device manufacturer. It manufactures a number of total hip replacement components, one set of which constitutes the Pinnacle Cup System.[1] The Pinnacle Cup System consists of acetabular[2] cups and liners, which are used with a femoral head and stem. Once implanted, the femoral head moves against the liner, which is inserted into the acetabular cup.

---

[1]   The ASR XL total hip replacement system is a separate metal-on-metal total hip replacement system that DePuy manufactured.

[2]   An "acetabular" cup fits into the acetabulum, which is the cup-shaped pocket of the hip bone.

Historically, head-on-liner combinations of the Pinnacle Cup System permitted physicians to choose from a variety of surface combinations, including ceramic-on-ceramic, ceramic-on-polyethylene, ceramic-on-metal, metal-on-polyethylene, and metal-on-metal. (Add. 9;[3] J.A. 608 – Pinnacle Advertisement – Intelligent Hip Surgery; J.A. 619 – Pinnacle Compatibility Guide; J.A. 604.1 – Defendants' Oral Argument PowerPoint Presentation Illustration; R. 146 at 4.).[4] Available Pinnacle Cup System heads included (1) the aSphere M-Spec and M-Spec metal heads; (2) the Standard Metal head; and (3) the BIOLOX delta ceramic head. (Add. 9, J.A. 622.) The Pinnacle Cup System's liners were available in a variety of materials, including metal and polyethylene ("poly"): DePuy manufactured the Ultamet and Ultamet XL metal liners, as well as the Marathon and AltrX poly liners. (Add. 10.) The Standard Metal head was not compatible with Pinnacle metal liners and therefore could only be used with poly liners. (Add. 10.) As the District Court stated, "[o]nly a 'M-Spec' head and 'Ultamet' liner combined to create the Pinnacle MoM device." (Add. 34.) In the entirety of the

---

[3]   References to the Addendum (attached to the Relators' brief) will be referred to as "Add." The Joint Appendix will be referred to as "J.A." Materials in the record and not otherwise within the Joint Appendix will be referred to as "R."

[4]   In addition to the District Court's recognition of the ceramic-on-polyethylene, metal-on-polyethylene, and metal-on-metal combinations, the record below shows that ceramic-on-ceramic and ceramic-on-metal combinations were also available.

counts of the SAC, the Relators seek recovery for claims only involving the Pinnacle MoM device. (Add. 10.)

The Pinnacle Cup System can be used with a variety of DePuy's femoral stems, including the CORAIL stem, the SUMMIT stem, the AML stem, the TRI-LOCK stem, and the S-ROM stem. (Add. 10, J.A. 684 – Pinnacle Design Rationale.) As the Relators stated in the SAC, these stems are not part of the Pinnacle system and they can be used with other DePuy total hip replacement systems, including the ASR XL. ("However, the surface roughness manufacturing defect also affects devices *other than the Pinnacle MoM* . . . These affected devices include DePuy's S-ROM, SUMMIT, CORAIL, and AML hip replacement products.") (J.A. 460, ¶396; *see also* Add. 10.)

Due to low sales, among other reasons, DePuy announced the discontinuation of the sale of metal liners on May 16, 2013. (R. 146 at 4.)

### B. Procedural History

This is a False Claims Act *qui tam* action brought pursuant to 31 U.S.C. § 3730. The Relators are two British doctors who do not practice medicine in the United States and who, therefore, have no personal experience submitting claims for reimbursement to United States healthcare programs. (R. 146 at 2.) The Relators are expert witnesses in two products liability MDL actions: (1) *In re: DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, No. 1:10-md-

5

02197 ("ASR MDL") and (2) *In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-02244 ("Pinnacle MDL"). (Add. 61.) Additionally, the Relators have presented at international hip replacement conferences and published articles on topics pertaining to total hip replacements. (*See, e.g.*, J.A. 1025-1033.)

The Relators filed their original complaint in this matter on May 18, 2012. (Add. 61.) The Defendants have never seen the original complaint. Following the filing of the original complaint, the United States Department of Justice conducted an investigation into the complaint's allegations. During the government's investigation, on December 2, 2013, the Relators filed a First Amended Complaint ("FAC") under seal. (Add. 53.) The Defendants fully cooperated with the government's investigation and, in June 2014, the government declined to intervene in the matter. (R. 32.)

This case followed an unusual procedural path in the months following the government's declination decision. Even though the Relators signed confidentiality orders in the ASR and Pinnacle MDLs that prohibited them from using confidential documents or information that they had obtained in their roles as expert witnesses in the two MDL actions, their FAC relied upon and incorporated confidential DePuy documents and information that the Relators only had access to through their work as expert witnesses in the ASR MDL action. After the

6

Government's declaration decision, the Relators requested that the FAC remain under seal.  The Honorable Indira Talwani, United States District Judge for the District of Massachusetts, who presided over this action at that time, granted their request.[5]  As the District Court later found, "The [R]elators made that request, in part, because the [FAC] incorporated confidential DePuy documents that the relators had access to through their work as expert witnesses in the two related MDL actions."  (Add. 61.)

Shortly after Judge Talwani's order, the Relators filed motions to intervene in the Pinnacle and ASR MDL actions.  The ostensible purpose of those motions was to "share confidential information which [the Relators] previously obtained in their capacities as expert witnesses" and to modify the confidentiality orders so that the Relators could "use the documents and information provided them in [these MDLs] in a pending False Claims Act action."  (J.A. 795.)

On January 5, 2015, the Honorable David A. Katz, United States District Judge for the Northern District of Ohio, who presides over the ASR MDL, issued an order denying the Relators' motion to intervene in the ASR MDL.  (J.A. 795.) In so doing, Judge Katz determined that the Relators had violated the ASR MDL confidentiality order: "The intervenors admit that between May 9, 2012 and June 5, 2014, they disclosed certain confidential documents and information, in explicit

---

[5] Judge Talwani's order unsealed the case going forward, but kept the FAC under seal.  (R. 58)

violation of . . . this Court's confidentiality order, to the United States and the governments of several states in connection with their Massachusetts case." (J.A. 796.)

Judge Katz found that the Relators had filed the motion to intervene for an improper purpose: "The Court finds the purpose for the motion is to allow the experts to personally benefit at the detriment of both parties. Allowing the intervention and modification of the Confidentiality Order rewards the intervenors for using confidential information they obtained in their roles as experts; information which would not have been available to them absent their special employment. The confidential information the intervenors received admittedly helps form the basis of their Massachusetts action. Permitting the use of the proposed information by the intervenors allows the intervenors to ignore their obligations under this Court's prior Confidentiality Order, effectively rendering the order null and void." (J.A. 799-800.) Judge Katz further stated, "If the Court agreed with the intervenors' request, these retained experts would be free to use the knowledge they obtain during this litigation for their own benefit. This result is unacceptable." (J.A. 801.)

Judge Katz then stated, "pursuant to the Confidentiality Order, the [Relators] are *prohibited* from sharing or using the information they received in their capacities as experts in their False Claim[s] Act proceeding." (Emphasis in

8

original)  (J.A. 802.)  Following Judge Katz' order, the Relators withdrew their motion to intervene in the Pinnacle MDL.  (Add. 47.)

Judge Katz' ruling profoundly impacted how the Relators could proceed with their FCA claims.[6]  On February 23, 2015, the Relators filed a motion to partially unseal the FAC for the purpose of asking the Judicial Panel on Multi-District Litigation to transfer this case to the Pinnacle MDL.  (Add. 47-48.)  The Defendants opposed that request on the grounds that the FAC, which incorporated confidential DePuy documents, could no longer be used in this case in light of Judge Katz' order.  (Add. 58-59.)  The District Court agreed with the Defendants. At the March 18, 2015 hearing on the Relators' motion to partially unseal, the District Court ruled that the FAC was "tainted" and could not be partially unsealed for the purpose of seeking a transfer.  (Add. 69, 72.)

The District Court then set a briefing schedule for the Relators to file a motion for leave to file a proposed second amended complaint under seal.  (Add. 71.)  Additionally, because of the Defendants' concerns that a new complaint might pose the same confidentiality issues as the FAC, the District Court required the Relators to submit affidavits stating that the allegations in the proposed SAC did not make use of confidential documents or violate the MDL confidentiality

---

[6]   Given the significance of Judge Katz' order in this case, the Defendants cannot conceive of any reasonable explanation as to why the Relators omitted discussion of this order in their brief before this Court.

orders and Judge Katz' January 5, 2015 order.  (Add. 69.)  The District Court also approved the Relators' request that the parties confer as to whether certain documents alleged in the proposed SAC were subject to the confidentiality orders. (Add. 73.)

Following the March 18, 2015 hearing, the Relators engaged the Defendants in correspondence as to whether vague *categories* of documents were subject to the confidentiality orders.  Throughout the March and April 2015 correspondence, the Relators refused to provide the Defendants with actual, specific documents that would allow the Defendants to determine if those documents were subject to the confidentiality orders.  (J.A. 138-149; R. 106-3 and 106-4.)  Then, on April 3, 2015, the Relators filed a declaratory judgment action in the Northern District of Ohio, through which the Relators sought to determine if *categories* of documents were subject to the confidentiality orders.  (J.A. 76.)  Following an April 16, 2015 conference call with Judge Katz, the Relators ultimately provided the Defendants with specific documents to determine if those documents were subject to any confidentiality orders.  (R. 110-5.)

On May 4, 2015, the Relators filed their motion for leave to file the SAC. (J.A. 169, 360.)  The Defendants opposed that motion on the grounds that the Relators previously had stated to the District Court, on numerous occasions, that allegations regarding the ASR XL device would be omitted entirely from the SAC,

yet the Relators' proposed SAC was replete with allegations regarding the ASR XL. (J.A. 584.) Following a June 5, 2015 oral argument on the Relators' motion to amend, the District Court – although it had expressed skepticism as to why the SAC contained allegations regarding the ASR XL (J.A. 591-92) – granted the motion and the SAC became the operative complaint in this case. (J.A. 599.) Given the continued concerns regarding the Relators' disclosure of confidential DePuy documents and information, the District Court also permitted the Defendants to request, and for the Relators to provide, information concerning the source of the SAC's allegations. (J.A. 600.) The SAC remained under seal pending the Defendants' receipt and review of information from the Relators regarding the source of the SAC's allegations. (J.A. 603.)

The Defendants filed their motion to dismiss on June 26, 2015. The Defendants filed the motion to dismiss under seal pending the receipt and review of information from the Relators regarding the source of the SAC's allegations. After receiving the Defendants' motion to dismiss, rather than file a motion for leave to amend and file a third amended complaint, the Relators opposed the Defendants' motion. (R. 152.) The Relators' opposition contained only a cursory and boilerplate request at the end of the memorandum that they be permitted leave to amend should the SAC be found deficient. (R. 152 at 30.) The District Court

heard oral argument on the Defendants' motion to dismiss on July 30, 2015. (J.A. 719.)

After several weeks of correspondence between the parties regarding the source of the SAC's allegations, on August 24, 2015, the Relators filed a motion to unseal the SAC. (R. 172.) The Defendants did not oppose the request, but also requested that the District Court unseal the motion to dismiss briefing papers as well as the filings pertaining to the Relators' August 24, 2015 motion to unseal the SAC. (R. 177.) The District Court issued its decision on the motion to dismiss on February 2, 2016. (Add. 1.) The Relators never filed a motion for leave to amend during the seven month period between the Defendants' June 26, 2015 motion to dismiss and the District Court's February 2, 2016 ruling. The Relators filed a motion for reconsideration on March 1, 2016. (J.A. 803.)

## C. **The Lower Court's Rulings**

In their motion to dismiss, the Defendants argued that the Relators had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and also that the Relators had failed to satisfy the particularized pleading requirements of Rule 9(b). The District Court held that the Relators had failed to satisfy Rule 9(b) because the Relators had not alleged sufficient information as to specific claims for payment, either for "direct" or "indirect" claims for payment. (Add. 3-4, 38-39, 43.) The District Court deferred ruling on the Defendants' Rule 12(b)(6) arguments, as the

Supreme Court's decision in *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 582 (2015) was pending at the time. (Add. 49.) The District Court also dismissed the Relators' state law claims for failure to comply with Rule 9(b), and it dismissed the Relators' conspiracy claims as well. (Add. 52.) The District Court then denied the Relators' informal and boilerplate requests for leave to amend on the basis of undue delay. (Add. 53-57.) In its decision, the District Court also unsealed the SAC. (Add. 53.)

On March 1, 2016, the Relators filed a motion for reconsideration. (J.A. 803.) In this motion, the Relators challenged the District Court's decision to deny their request for leave to amend. (J.A. 806.) The District Court summarized the Relators' allegations as follows: "According to the Relators, they have secured new, previously undiscoverable evidence of indirect false claims involving the Pinnacle metal-on-metal." (Add. 62.) The District Court denied their request, ruling as follows: "After careful review of the added information in the proposed third amended complaint and the relators' explanations for why it was previously undiscoverable, it appears that the information should have been discovered before the SAC was filed, even with only the most basic investigative diligence. Indeed, the information should have been discovered four years and three complaints ago." (Add. 60.) This appeal followed the District Court's denial of the Relators' motion for reconsideration.

## SUMMARY OF ARGUMENT

The Relators in this FCA *qui tam* action are two British doctors who are also expert witnesses in two products liability MDL actions against DePuy.  In bringing this case, the Relators have attempted to turn products liability claims into an FCA action for the Relators' own personal reward and benefit.  But while the Relators have pled hundreds of paragraphs in the SAC alleging that the Defendants engaged in a widespread scheme of misconduct, the Relators have failed to plead the very essence of an FCA violation: that the alleged misconduct resulted in a *false claim for payment*.

The insurmountable deficiencies in the Relators' case were compounded when the Government announced that it had declined to intervene in the case.  (R. 32.)  After the Government's declination, the Relators were left with a FAC that the District Court ultimately deemed "tainted" and unusable.  The Relators had used confidential DePuy documents, which they only had access to in their role as expert witnesses in a MDL products liability action, in violation of a confidentiality order that was (and still is) in effect.  More than three years after filing their original complaint, the Relators filed a second amended complaint.  The SAC is the subject of the District Court's rulings below.

Despite the Relators' 61-page appellate brief, this case boils down to one key point: the Relators have not satisfied the pleading standards as articulated by

14

this Circuit in *United Sates ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13 (1st Cir. 2009), *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116 (1st Cir. 2013), and *United States ex rel. Kelly v. Novartis Pharms. Corp.*, 827 F.3d 5 (1st Cir. 2016).

In their appellate brief, not only do the Relators misinterpret and misapply the First Circuit's case law on the Rule 9(b) standards applicable in FCA cases, but the Relators' proposed standards would rewrite this Circuit's jurisprudence in a manner wholly inconsistent with long-established precedent.  Indeed, the Relators' proposed standards would recast the FCA effectively into a "Defective Medical Device Act," wholly devoid of any connection between an alleged defective medical device and a *false claim for payment*.

Because their appellate brief makes no argument as to direct claims, the Relators have waived any argument that they adequately pled that the Defendants directly submitted false claims for payment to the United States government.  With respect to their allegations that the Defendants indirectly caused third parties to submit false claims for payment to the United States government, this Circuit established the Rule 9(b) pleading requirements for such claims in *Duxbury*.  In the seven years following the *Duxbury* decision, this Circuit has consistently applied *Duxbury*'s framework, most notably in *Ge* and *Kelly*.  This standard is not a "relaxed" standard, as Rule 9(b)'s heightened pleading requirements apply in full

15

force to allegations of indirect claims for payment. The standard also is not, as the Relators suggest, simply one of "reasonable inferences." *Duxbury* requires not only that an inference of fraud be found, but also requires factual or statistical evidence that strengthens that inference of fraud beyond possibility. In a lengthy decision, the District Court correctly applied the *Duxbury* framework to the Relators' SAC and its decision should be upheld.

Furthermore, the Relators' argument that this Circuit has not examined whether claims of total falsity should have a separate standard under Rule 9(b) is unsupported by the language of the FCA statute itself and by the law of this Circuit. Both 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B) require that parties allege evidence regarding a *false claim for payment*. And for over twenty years, this Circuit has held that liability does not attach to the underlying alleged misconduct or to the government payment, but only to a *false claim for payment*. This requirement was articulated in *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995), and it was reinforced in *Duxbury*, *Ge,* and *Kelly*.

The requirement that a Relator connect allegations of misconduct to a *false claim for payment* applies to any liability theory, regardless of whether the liability theory would render only a subset of claims for payment false or whether it would render all claims for payment false. The requirement that the Relators satisfy Rule 9(b)'s heightened pleading standards and connect allegations of misconduct to

16

claims for payment prevents parasitic relators from successfully mounting claims. That concern is especially true here, where the Relators relied on documents that they had obtained in violation of a court order and failed, three years after they originally had filed the case, to file a complaint that satisfies Rule 9(b)'s heightened pleading requirements. The Relators' suggested "totally falsity" pleading standard would turn the FCA on its head and allow any allegations of widespread misconduct to proceed without any connection between the underlying allegations of misconduct and claims for payment, which are the essence of the *False Claims* Act. Were the Relators' approach to prevail, all relators going forward could allege that a scheme of misconduct or a defective product, by itself, renders all claims for payment false, without pleading a false claim for payment or satisfying the framework established in *Duxbury* and its progeny.

Finally, the District Court did not abuse its discretion in denying the Relators' boilerplate request for leave to amend or in denying the Relators' motion for reconsideration. From the inception of this case, the Relators had over four years to satisfy long-established First Circuit pleading standards. The Relators are not typical whistleblowers. As orthopedic surgeons who speak and publish internationally, they were uniquely positioned to have conducted the due diligence necessary to obtain the information that would have satisfied Rule 9(b)'s heightened pleading requirements. That the SAC remained under seal was a

consequence of the Relators' decision to violate another district court's confidentiality order. The District Court articulated numerous bases for denying the Relators' request to file a third amended complaint on the grounds of undue delay, and its decisions should be affirmed.

## ARGUMENT

### I.   THE DISTRICT COURT CORRECTLY RULED THAT THE RELATORS' SECOND AMENDED COMPLAINT FAILED TO SATISFY RULE 9(b)'S PLEADING REQUIREMENTS

This Circuit reviews the District Court's order dismissing the Relators' SAC for failure to comply with Rule 9(b)'s heightened pleading requirements *de novo*. *Ge*, 737 F.3d at 123. Rule 9(b) requires that "[in] alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading requirements apply to claims brought pursuant to 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B). *Ge*, 737 F.3d at 125 n.5. This Court "'accept[s] as true all well-pleaded facts, analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff.'" *Kelly*, 827 F.3d at 11 (quoting *United States ex rel. Hutcheson v. Blackstone Med. Inc.*, 647 F.3d 377, 383 (1st Cir. 2011)).

To satisfy Rule 9(b)'s standards, the Relators must do more than allege a scheme of fraudulent misconduct. The Relators must also connect the alleged misconduct to claims for government payment. *Rivera*, 55 F.3d at 709 ("[T]he

[FCA] statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'").   Indeed, "[e]vidence of an actual false claim is 'the sine qua non of a False Claims Act violation.'"   *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004) (internal citations omitted).

**A.**   **The District Court Not Only Correctly Ruled that the Relators Failed to Adequately Plead Direct Claims, But the Relators Have Waived Any Argument that Such Claims Were Adequately Pled**

The District Court extensively analyzed and correctly determined that the Relators had not adequately pled that the Defendants directly submitted claims for payment to the United States government for the Pinnacle MoM device.  (Add. 30-39.)   The District Court's opinion analyzed (1) the First Circuit standards applicable to direct claims (Add. 30-32), including the standards articulated in *Karvelas*, 360 F.3d at 225; (2) whether the Relators' allegations in the SAC regarding orders by the Department of Veterans Affairs ("VA") were for the Pinnacle MoM device or for other irrelevant products (Add. 32-35); and (3) whether the Relators' allegations regarding Pinnacle MoM orders constituted claims for payment or were in any way false.  (Add. 36-39.)   The District Court also dismissed the Relators' reliance on *United States ex rel. Rodwell v. Excelitas Techs., Corp.*, No. 13-10963, 2015 U.S. Dist. LEXIS 78508 (D. Mass. June 16, 2015), holding that the Relators had failed to show that DePuy had entered into

19

specific contracts with the VA or that any of the alleged contracts that DePuy may have had with the VA actually covered the Pinnacle MoM device. (Add. 37-38.)

Despite the District Court's detailed and extensive attention to this issue, the Relators make no argument in their appellate brief that the District Court erred in ruling that the Relators' allegations regarding direct claims for payment to the VA failed to satisfy Rule 9(b). The Relators make no argument in their brief that the District Court erred in ruling that ten of the twelve alleged VA orders did not pertain to the Pinnacle MoM device.[7] Nor do the Relators argue that the two VA orders relating to the Pinnacle MoM device were actually claims for payment, or were false claims for payment, or that they satisfied the standard articulated by this Circuit in *Karvelas* for pleading direct claims for payment. Furthermore, the Relators made no argument that the District Court erred in its interpretation of *Rodwell*.[8]

---

[7]   The Relators argue that the allegations regarding Patient F.I. pertained to the Pinnacle MoM device (Relators' Brief 23), but do not make any similar arguments regarding the VA orders.

[8]   The Relators suggest, in a footnote, that the Supreme Court's decision in *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) warrants leave to amend in order to determine whether the Relators' direct claims give rise to an "implied certification claim." (Relators' Brief 26 n.3.) Nothing in *Universal Health Services* changed the Rule 9(b) pleading requirements applicable in this case, and this case should not be remanded – or leave to amend granted – because of the Supreme Court's decision.

This Circuit has long held that a party's failure to argue an issue on appeal in the party's appellate brief renders the issue or argument waived. *See, e.g.*, *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 352 (1st Cir. 1989) (holding that a party abandoned an issue by failing to argue the point in its briefs); *Ortega Cabrera v. Bayamon*, 562 F.2d 91, 97 n.3 (1st Cir. 1977) (holding that failure to argue an issue on appeal is treated as having waived any such claim). By failing to make any arguments in their brief regarding the adequacy of the direct claims alleged in the SAC, the Relators have waived any argument that the District Court improperly ruled that the Relators' direct claims failed to satisfy Rule 9(b). As such, this Court should affirm the District Court's ruling that the Relators' direct claims failed to satisfy Rule 9(b)'s heightened pleading requirements.[9]

---

[9]  Alternatively, if this Court for any reason deems that the Relators did not waive the argument that their allegations regarding VA orders satisfy Rule 9(b)'s pleading requirements for direct claims for payment, the Relators' argument still fails. The District Court correctly decided, after a lengthy analysis, that ten of the twelve alleged VA orders did not reference the Pinnacle MoM device. (Add. 32-35.) For the two remaining VA orders, the District Court properly applied the standards articulated in *Karvelas* and correctly ruled that those allegations did not satisfy Rule 9(b), as the Relators did not show that those allegations were anything more than orders, rather than claims for payment, or that such orders resulted in *false* claims for payment. (Add. 35-37.) The District Court also correctly analyzed and applied *Rodwell*, and determined that while the relator in *Rodwell* had "identified specific contracts that the defendant had with the government, the specific terms of those contracts, and three batches of product orders that the government placed pursuant to those contracts . . . ," the Relators here failed to identify with any specificity what the contract terms were, what products the contracts covered, and whether DePuy presented any false claims for payment for the Pinnacle MoM device pursuant to those contracts. (Add. 37-38.) The District

## B.   The District Court Correctly Dismissed the Relators' Claims that the Defendants Caused Third Parties to Submit False Claims for Payment

The Relators misinterpret and misstate this Circuit's long-established framework regarding the Rule 9(b) pleading standards governing "indirect claims." In cases where a relator alleges that a defendant caused a third party to submit false claims for payment, "a relator could satisfy Rule 9(b) by providing 'factual or statistical evidence to strengthen the inference of fraud beyond possibility' without necessarily providing details as to each false claim." *Duxbury*, 579 F.3d at 29 (quoting *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007)), *overruled in part on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008).  This standard is not a "relaxed" standard, as the Relators suggest, but simply a different pathway for relators to satisfy Rule 9(b)'s heightened pleading standards in such circumstances.  *Kelly*, 827 F.3d at 13 ("Where, as here, it is alleged that the defendant caused a third party to submit a claim to the government, then the First Circuit applies a somewhat 'more flexible' standard . . ."); *Ge*, 737 F.3d at 123 ("*Karvelas* also rejects the notion that the Rule 9(b) pleading standard is relaxed for FCA claims." (citing *Karvelas*, 360 F.3d at 228-31)).

---

Court's decision on this issue was robust and consistent with applicable precedent of this Circuit and it should be affirmed.

1.     **The District Court Correctly Ruled that the Relators'
Allegations Regarding Patient F.I. Do Not Constitute a
"Claim" for Payment**

The District Court carefully analyzed the SAC's inconsistencies regarding the use of the term "Pinnacle" versus "Pinnacle MoM." The District Court recognized that multiple variations of the Pinnacle hip replacement system are possible – not just metal-on-metal, but also metal-on-poly and ceramic-on-poly. (Add. 32.) The District Court then stated that it was "unclear whether the relators intended to define 'Pinnacle' to mean 'the Pinnacle Acetabular Hip System' (which comprises metal, ceramic, and polyethylene products) or to mean the metal-on-metal subset of Pinnacle devices." (Add. 32.) The District Court then found that "in the section that alleges the proposed false claims, the relators use vague terms such as 'Pinnacle products' or refer to products that are not part of the Pinnacle system at all." (Add. 33.)

The District Court found that the one allegation of an "indirect claim" regarding Patient F.I., at paragraph 414 of the SAC, failed to meet Rule 9(b)'s particularity requirements. The District Court explained that the claim "does not identify the specific Pinnacle MoM device that is the subject of the present controversy. Put another way, the SAC does not allege that the surgeon presented a claim to Medicaid for a Pinnacle MoM device, as opposed to a Pinnacle device with a ceramic head or a polyethylene liner." (Add. 40.)

The District Court is required only to make "reasonable inferences" from the SAC's allegations, but it is not required to make "unreasonable" or "all" inferences. *See, e.g.*, *Kelly*, 827 F.3d at 11; *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 203 (1st Cir. 2014) ("Of course, we do not credit conclusory allegations or draw farfetched inferences."). Whether an inference is "reasonable" depends on the facts of each case. None of the cases cited by the Relators at pages twenty-four and twenty-five of their brief contain facts similar to this case and are thus inapplicable. Here, the Relators have not pled with particularity that a claim for a Pinnacle MoM device was submitted to the federal government. As the District Court found, the SAC "seems to make clear that the only *relevant fraudulent activity* involved Pinnacle *metal-on-metal* devices." (Add. 33 (emphasis added).) One purpose of Rule 9(b) is to put defendants on notice of the alleged fraud, and it would be untenable to permit this case to move forward where the Relators' one attempted indirect claim leaves serious questions as to whether the claim was actually for a ceramic-on-ceramic, ceramic-on-metal, metal-on-poly, or ceramic-on-poly device.

Additionally, the Relators' arguments at pages twenty-five and twenty-six of their brief regarding the District Court's consideration of marketing materials are not only inaccurate, but have been waived. The Defendants cited case law explaining why the District Court could consider the materials in its decision on

the motion to dismiss.  (R. 146 at 4 n.1 (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) for the standard that documents may be considered as part of a motion to dismiss where (1) the authenticity of the documents is not disputed by the parties; (2) the documents are official public records; (3) the documents are central to plaintiff's claim; or (4) the documents are sufficiently referred to in the complaint)).  The Defendants also provided the Relators with ample notice that they were requesting the District Court to consider these materials, as the Defendants attached the materials as exhibits to their motion to dismiss.  (J.A. 608, 619, 684.)  Despite ample opportunity, at no time during the motion to dismiss briefing did the Relators object to the District Court's consideration of these materials and, by failing to do so, the Relators waived their argument that consideration of the materials was inappropriate.  *See, e.g.*, *Ge*, 737 F.3d at 124 (rejecting the relator's new theories of argument because they were not properly raised before the district court).  Furthermore, the SAC is replete with references to marketing materials.  (Add. 9 n.3.)   The Relators cannot cherry pick when marketing materials can be considered and when they cannot.

The District Court's careful review of the SAC's inconsistencies, coupled with Rule 9(b)'s particularity requirements, warranted the District Court's determination that the Relators had not pled an indirect claim for a Pinnacle MoM device.  As such, the Relators' only remaining option was to establish that they had

sufficiently satisfied *Duxbury*'s framework of "factual or statistical evidence to strengthen the inference of fraud beyond possibility."

> **2.  The District Court Correctly Ruled that the Relators' Allegations Regarding Patient F.I. Do Not Satisfy the Framework Established in Duxbury**

The key question before this Court is whether the SAC satisfies the First Circuit's Rule 9(b) pleading standards established in *Duxbury* and subsequently applied in *Ge* and *Kelly*. The District Court correctly applied the *Duxbury* framework to the SAC's allegations regarding indirect claims and, as the District Court's opinion shows, the Relators' allegations regarding Patient F.I. fall woefully short of meeting Duxbury's standards.[10]

---

[10]  The Relators argue that the District Court's statement that 31 U.S.C. § 3729(a)(1)(A) governs direct claims and 31 U.S.C. § 3729(a)(1)(B) governs indirect claims is reversible error. (Relators' Brief 19-22.) The Relators fail to grasp, however, that the District Court clearly and expressly applied the *Duxbury* framework to its extensive analysis of the Relators' indirect claims. Indeed, as the District Court stated in its April 11, 2016 order, "On February 1, 2016, the Court granted DePuy's motion to dismiss, concluding that the 168-page SAC failed to plead a single direct or indirect false claim with the particularity required by Rule 9(b) and *Duxbury I*." (Add. 62.) Not only did the District Court apply the correct framework, but it also arrived at the correct result. Its decision should be affirmed. *See, e.g., Ticketmaster-New York*, 26 F.3d 201 at 204 (affirming district court's motion to dismiss decision and stating, "[W]e are not wedded to the district court's rationale, but remain free to affirm the judgment below on any independently sufficient ground made manifest by the record.").

> a) **The Relators Failed to Plead Factual Evidence to Strengthen the Inference of Fraud Beyond Possibility**

As in *Duxbury*, the Relators do not allege any actual claims for payment, and so the Relators must plead factual or statistical evidence to strengthen the inference of fraud beyond possibility. In *Duxbury*, the relators pled eight representative examples where the Relators provided information as to "eight medical providers (the who), the illegal kickbacks [allegedly provided *to those providers*] (the what), the rough time periods and locations (the where and when), and the filing of false claims themselves." *Duxbury*, 579 F.3d at 30. This Court described those examples as a "close call." *Id.* Critical to the analysis in *Duxbury* was that the relators there connected the alleged misconduct to the alleged false claims for payment. For instance, one of the relator's examples pled in *Duxbury* was that the Western Washington Treatment Center in Olympia received more than $5,000 of free drug, and the relators further alleged that the provision of the $5,000 in free drug resulted in government reimbursement. *Id.*

Here, the Relators' allegations regarding Patient F.I. failed to meet *Duxbury*'s standard in numerous respects. First, the Relators only attempted to allege one example, not the eight representative examples that were pled in *Duxbury*.[11] Second, the Relators did not allege when in relation to Patient F.I.'s

---

[11] The Relators seek to rely on this Circuit's opinion in *United States ex rel. Escobar v. Universal Health Servs.*, 780 F.3d 504 (1st Cir. 2015) for the

surgery Dr. J.N. received the allegedly false marketing or packaging materials, or who from DePuy provided Dr. J.N. with these materials. Third, and most importantly, the Relators do not allege that any marketing or packaging materials or other alleged misrepresentations *resulted in* a false claim for payment. Indeed, as the District Court held, "The SAC here fails to connect the multiple allegations of DePuy's misrepresentations and omissions to any specific claims for payment . . . the SAC [does not] appear to identify a single physician who was a target of allegedly false DePuy marketing, identify a single physician who relied on that marketing, or identify a single physician who filed a false claim for the DePuy MoM device. The closest that the SAC comes to such specificity is 'Dr. J.N.' and 'patient F.I.,' but the SAC does not identify the specific representations or materials that the doctor received and relied upon, nor does it allege the specific DePuy device for which the doctor filed a claim." (Add. 42.) The Relators' failure

---

proposition that "[t]his Court has previously upheld representative claims that involved only one patient and in which relevant providers were not identified in the complaint." (Relators' Brief 29.) *Escobar*, however, does not support the Relators' argument. In *Escobar*, the relators were the parents of a child who received subpar mental health treatment. The parent-relators pled the "core" material that *Karvelas* requires for claims regarding *direct* claims for payment: "Relators' complaint sets forth the core of this material: it alleges twenty-seven separate dates on which claims were submitted in connection with Yarushka's care, each time including the relevant billing codes, amount invoiced, and the name of the Arbour staff member who provided the treatment for which reimbursement was sought. Relators have thus succeeded in linking their allegations of fraud to specific claims for payment." *Escobar*, 780 F.3d at 515. The relators in *Escobar* pled at least twenty-seven times the amount of information that the Relators here have pled, and in much greater specificity regarding the services provided.

to connect the alleged misconduct to false claims for payment is a fatal deficiency in the SAC.[12]

The Relators' argument that the District Court fashioned a "reliance" element into the FCA is a drastic misinterpretation of the Court's opinion. At paragraph 420 of the SAC, the Relators allege as follows: "On information and belief, *but for DePuy's false statements*, Dr. J.N. would have chosen a different available device for the hip replacement surgery he performed on Mr. F.I." (J.A. 465, ¶420.) The Relators' own allegation asserts that Dr. J.N. himself relied on DePuy's alleged misrepresentations, otherwise he would not have used the device.

---

[12]   The Relators argue that the District Court created its own heightened Rule 9(b) pleading standards in *United States ex rel. Leysock v. Forest Labs, Inc.*, 55 F. Supp. 3d 210 (D. Mass. 2014) (Saylor, J.) and that *Leysock* required the Relators to plead "too much." (Relators' Brief 53-54.) First, the District Court grounded its analysis in *Duxbury*, which was decided in 2009, and its standards were therefore long-known to the Relators. Second, the District Court did not create a heightened pleading standard in *Leysock*, but rather applied *Duxbury* to the specific facts of that case. As the District Court stated in its April 11, 2016 order, "Moreover, and in any event, it is disingenuous for the relators to suggest that the Court applied its own unique pleading standards in considering DePuy's motion to dismiss. The Court did what it always must do: apply the law dictated by the First Circuit, which in this case is *Duxbury I*. In ruling on DePuy's motion, the Court discussed *Leysock* very briefly, and only because both parties spent significant portions of their briefs comparing *Leysock* to the relators' allegations here." (Add. 67 n.5.) In *Leysock*, the relators connected the alleged misconduct to the claims for payment and therefore the complaint withstood a Rule 9(b) challenge. Whereas the relators in *Leysock* provided the names of individual physicians who were the recipients of the defendant's off-label marketing and who then, in reliance on the defendants' off-label marketing, prescribed the drug off label, the Relators here have failed to make the requisite connection between alleged misconduct and alleged false claims for payment. *See Leysock*, 55 F. Supp. 3d at 219.

This type of legal-argument-disguised-as-fact allegation does not satisfy Rule 9(b). *See, e.g.*, *Ge*, 737 F.3d at 124. The District Court found that the Relators did not, in fact, allege the specific misrepresentations that were made or materials that were provided to the doctor, or when, or by whom, and which resulted in false claims for payment. (Add. 42.) The District Court did not read a "reliance" requirement into the FCA, but simply examined the Relators' alleged theory of misconduct and determined that the Relators had failed to connect that theory to any resulting false claim for payment.[13]

The Relators' allegations in the SAC more closely resemble the allegations in *Kelly*, which this Court deemed inadequate. In *Kelly*, this Court stated that "[t]he closest Relators get to positing the existence of fraud is to allege that certain doctors, at various points, (1) were enrolled in federal reimbursement programs, (2) received services and incentives from Defendants, and (3) prescribed Xolair. Relators failed, however, to tie these independently unexceptional allegations together into particularized charges about specific fraudulent claims for payment." *Kelly*, 827 F.3d at 15. Similarly, here, the Relators allege that Patient F.I. was enrolled in Medicaid, that Dr. J.N. generally was provided "surgical instructions and materials" regarding a "Pinnacle device" (J.A. 464, ¶415), and that Dr. J.N.

---

[13] The cases relied upon by the Relators at pages twenty-four and twenty-five of their brief are inapplicable to this discussion. The reliance cases discussed by the Relators are not FCA cases and they do not address the question of how the Relators connected their allegations of misconduct to false claims for payment.

implanted a "Pinnacle hip" into Patient F.I. (J.A. 464, ¶414). Just as in *Kelly*, the Relators failed to tie together very generalized, non-descript allegations into particularized allegations about specific fraudulent claims for payment.

> b)     *The Relators Failed to Plead Statistical Evidence to Strengthen the Inference of Fraud Beyond Possibility*

With the Relators' allegations regarding Patient F.I. eliminated as insufficient factual evidence under *Duxbury*, the Relators are left with only their conclusory statistical allegations. The Relators alleged – without providing any basis for their numbers – that over one million metal-on-metal devices were sold worldwide (J.A. 467, ¶434), that over 300,000 hip replacement surgeries occurred in the United States in 2010 (without allegation of whether these were total hip replacement surgeries, revisions, or something else) (J.A. 467, ¶436), and thus it followed that "hundreds of thousands of Pinnacle products were implanted in Government health care recipients and reimbursed by the Government during the lifespan of the product" (without allegation as to whether these Pinnacle products were metal-on-metal combinations or if they were other Pinnacle combinations) (J.A. 467, ¶437).

With respect to the Relators' New York State Medicaid allegations, the Relators alleged that New York State Medicaid paid for approximately 1,280 total hip replacement devices in a year (without allegation of whether these were metal-on-metal total hip replacement procedures or other combinations) (J.A. 468, ¶438),

that New York State Medicaid covered approximately 8% of all Medicaid beneficiaries (J.A. 468, ¶442), that in 2010, 27% of all total hip replacement surgeries *in the United States* were for any metal-on-metal device, regardless of manufacturer (J.A. 468, ¶443), that Pinnacle and ASR XL were approximately 75% of the metal-on-metal hip replacement market (without defining whether this market was international, national, or by state) (J.A. 468, ¶444), that Pinnacle would have been roughly 50% of DePuy's metal-on-metal hip replacement sales prior to 2010 and 70% after 2010 (J.A. 468, ¶445) and, therefore, New York State Medicaid paid for approximately 850 Pinnacle devices between 2005 and 2010 (without specifying whether these Pinnacle devices were metal-on-metal or other combinations).

The Relators' allegations fail to provide the statistical evidence necessary to strengthen the inference of fraud beyond possibility. The Relators' allegations are not grounded in reasonable methodology and they represent a haphazard attempt to throw an unrelated series of numbers against the wall and see what might stick. The Relators' statistical allegations consistently fail to specify whether total hip replacement procedures were for a DePuy product or another manufacturer's product, and whether Pinnacle purchases were of metal-on-metal devices or other combinations of the Pinnacle system. These failures are, once again, fatal to the adequacy of the Relators' claims. *See, e.g.*, *United States ex rel. Hagerty v.*

*Cyberonics, Inc.*, 95 F. Supp. 3d 240, 268 (D. Mass. 2015) (finding that the relators failed to plead adequate statistical evidence because the relators did not link the percentage of revenues derived from government healthcare programs "with any specificity to the unnecessary [use of the device].").[14]  The District Court had more than an adequate basis to find that the Relators' statistical allegations were "unfocused and imprecise" and thus insufficient to satisfy Rule 9(b).  (Add. 42-43.)

### 3. The District Court Correctly Ruled that the Relators' Claims of "Total Falsity" Do Not Satisfy Rule 9(b)'s Heightened Pleading Standards

The Relators claim that this Court has yet to establish Rule 9(b) pleading standards in cases where *qui tam* plaintiffs allege theories of liability that render all claims false.  Yet the Relators' suggested pleading standard would upend this Circuit's prior holdings and eliminate the essential requirement of an FCA case: that the alleged misconduct resulted in a *false claim for payment*.

This Circuit has long established that allegations of a fraudulent scheme or misconduct are, by themselves, insufficient to establish liability under the False

---

[14]  The Relators' reliance on *United States ex rel. Westmoreland v. Amgen, Inc.*, 738 F. Supp. 2d 267 (D. Mass. 2010) is misplaced.  In *Westmoreland*, the district court found that the relators had satisfied *Duxbury*'s indirect claims standard where the relators provided statistical data linked directly to the drug at issue (Aranesp) *combined with* "factual details regarding specific providers and clinics that were offered kickbacks."  *Id.* at 276.  Here, the Relators' statistical data is not only insufficiently linked to the Pinnacle MoM device, but they have failed to allege sufficient factual details with respect to the alleged misrepresentations to physicians.

Claims Act. As this Court previously stated in *Ge*: "Any theory that all claims submitted during this period were false has even less basis to survive. Dr. Ge attempts to satisfy the Rule 9(b) requirements with a per se rule that if sufficient allegations of misconduct are made, it necessarily follows that false claims and/or material false information were filed. We reject that approach, which violates the specificity requirements of Rule 9(b)." *Ge*, 737 F.3d at 124. In addition to alleging a fraudulent scheme or misconduct, the Relators must tie the alleged misconduct to a *false claim for payment*. *Rivera*, 55 F.3d at 709 ("[T]he [FCA] statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"). Indeed, both 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B) explicitly require a *false or fraudulent claim for payment*.[15] The Relators suggest at page sixteen of their brief that "it suffices for relators to plead facts supporting an inference that . . . the government purchased the relevant devices at all." But this suggested pleading standard flies in the face of long-established precedent in this Circuit, as *Rivera*

---

[15] Liability under 31 U.S.C. § 3729(a)(1)(A) attaches to any person who "knowingly presents, or causes to be presented, a *false or fraudulent claim* for payment or approval." (Emphasis added.) Liability under 31 U.S.C. § 3729(a)(1)(B) attaches to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a *false or fraudulent claim*." (Emphasis added.) *See also United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 342-43 n.20-21 (D. Mass. 2011) (suggesting that under the 2009 FERA amendments, § 3729(a)(1)(B) also requires an actual claim).

held that false claims for payment *cannot* be inferred from government payment alone.[16]

To hold otherwise would be to start down not just a "slippery slope," but rather trigger an avalanche of whistleblower complaints in this Circuit alleging that a defendant manufactured a defective, unsafe and ineffective device, and therefore all claims for payment must be false. Such a standard would transform run-of-the-mill products liability suits into federal FCA cases. Indeed, the District Court articulated the essence of this concern:

> If the rule were otherwise, virtually any claim of misrepresentation or a product defect involving medical devices, pharmaceuticals, or other medical products could be brought as a *qui tam* action . . . As a matter of logic, any scheme that causes unreasonable or unnecessary purchases of a product or service will almost certainly result in the submission of some false claim, by someone, somewhere, to the federal government. Rule 9(b), however, requires something more than conclusory allegations that false claims must have resulted from the misconduct. *See Ge*, 737 F.3d at 124 (stating that the court 'reject[s] [the] approach' sought by the relator, which was 'a *per se* rule that if sufficient allegations of misconduct are made, it necessarily follows that false claims and/or material false information was filed.').

---

[16]   The Relators urge this Court to adopt the analysis set forth in *United States ex rel. Goulden v. Bae Sys. Info. & Elec. Sys. Integration*, No. 11-12017, 2014 U.S. Dist. LEXIS 109021 (D. Mass. Aug. 7, 2014). The Defendants submit that *Goulden* is a non-published decision, and the portion of *Goulden* to which the Relators cite does not reference any First Circuit or District of Massachusetts precedent. The Defendants reiterate that this Circuit requires either evidence of an actual claim for payment, or factual or statistical evidence that strengthens the inference of fraud beyond a possibility. The Relators, accordingly, must connect allegations of misconduct to specific false claims for payment.

(Add. 43 n.9.)  The District Court's ruling is also supported by the analysis in *Kelly*, where this Court rejected claims that proceeded by "insinuation."  This Court stated that "it may not be 'irrational to infer that, given [the allegations], some false claims for [Xolair] reimbursement were submitted to the government.'"  *Kelly*, 827 F.3d at 15 (citing *Rost*, 507 F.3d at 732).  But as *Kelly* makes crystal clear – despite the Relators' pleas to the contrary – even rational inferences and assumptions will not satisfy the requirement that the Relators plead "factual or statistical evidence [that would] strengthen the inference of fraud beyond possibility."  *Kelly*, 827 F.3d at 15 (citing *Rost*, 507 F.3d at 733).[17]

This is not a case where the Relators have alleged that immediately upon learning of a problem with the device, the FDA recalled the device.  Nor is it a case

---

[17]  The Relators also argue that all claims were false because Defendants' conduct resulted in false certifications by providers to Medicare.  (Relators' Brief 47.)  The Relators' claims fail for a number of reasons.  One, the Relators fail to identify which contracts, if any – let alone which provisions of which contracts – providers falsely certified compliance with.  Elsewhere in their brief, the Relators argue that physicians falsely certified that the use of the device was medically reasonable and necessary.  But the Relators must do more than make bald assertions regarding medical necessity.  The Relators may not rest on statistical probabilities, but rather must make claim-by-claim allegations regarding each individual health care provider's medical judgment.  *Nowak*, 806 F. Supp. 2d at 354 ("Each individual health care provider's medical judgment is an essential element of Nowak's FCA claim, without which she cannot demonstrate that a *false* or *fraudulent* claim was submitted.").  Here, the Relators assert in conclusory fashion that Dr. J.N.'s use of the "Pinnacle device" was medically unnecessary.  (J.A. 466, ¶424).  The Relators' allegations fall well short of the individualized medical judgment allegations required under Rule 9(b) and they do not constitute sufficient claims that all Pinnacle MoM claims were medically unnecessary.

where the Relators allege that sales of the device immediately plummeted to zero when physicians learned about problems with the device. Rather, this case is an example of expert witnesses in a products liability case attempting to gain a personal recovery by transforming products liability claims into a FCA case. As this Court in *Ge* recognized, because the FCA attracts parasitic relators, "there are a number of limitations on qui tam actions, *including the particularity requirements of Rule 9(b)*." *Ge*, 737 F.3d at 123 (emphasis added). Regardless of whether a relator alleges that all claims or only a subset of claims are false, this Court should not abandon over twenty years of precedent that requires a particularized connection between allegations of misconduct and claims for payment.

### C.   The District Court Correctly Dismissed the Relators' State Law Claims

Given the substantive similarity of the state FCA statutes and the federal FCA, courts construe the state FCAs consistently with the federal FCA. *New York v. Amgen Inc.*, 652 F.3d 103, 109 (1st Cir. 2011). In dismissing the Relators' state law claims, the District Court correctly applied the heightened pleading requirements of Rule 9(b) to the Relators' state law claims. *Nowak*, 806 F. Supp. 2d at 357 (a relator "must allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings."). The District Court reviewed the Relators' thirty-three state FCA claims and found that, with the exception of

New York and California, the SAC merely "repeat[ed] and reallage[d] each and every allegation contained in the paragraphs above as though fully set forth herein," without any attempt to allege "fraudulent conduct or false claims for the Pinnacle MoM device beyond the repeated conclusory allegations found in the specific counts." (Add. 52.)

With respect to the SAC's allegations concerning California, the District Court found that the allegations regarding a San Diego patient did not meet the requirements of Rule 9(b). (Add. 52.) Further, the allegations regarding a single New York Medicaid patient who received a "Pinnacle hip implant," and the related New York statistics, were similarly insufficient to survive Rule 9(b) because they failed to reference the Pinnacle MoM and did not raise an inference of fraud beyond mere possibility. (Add. 52.) Thus, the Relators failed to allege with particularity any state law claims whatsoever.

The case law relied upon by the Relators to support the proposition that their state law claims evidence a nationwide scheme is inapplicable. (Relators' Brief 48.) In those cases, the allegations of fraud in certain states contained enough detailed information to meet the pleading requirements of Rule 9(b), which in turn led the courts to infer that a nationwide scheme existed. *See, e.g.*, *Duxbury*, 579 F.3d at 30 (false claims submitted by eight health care providers in the state of Washington met the particularity requirements of Rule 9(b) and therefore

supported an inference of nationwide claims); *United States ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 15-16 (D. Mass. 2008) (two hundred claims submitted in the state of Indiana were sufficient to meet Rule 9(b) requirements and supported the pleading of FCA counts involving eleven other states); *United States ex rel. Carpenter v. Abbott Labs., Inc.*, 723 F. Supp. 2d 395, 403-09 (D. Mass. 2010) (sample of fifty-five off-label prescriptions for eight patients in the state of Massachusetts was sufficient for Rule 9(b) purposes and allowed the suit to proceed on a nationwide basis).

Here, the District Court correctly determined that the Relators' conclusory state FCA claims failed to meet Rule 9(b)'s particularity requirement and its ruling on the state law claims should be affirmed.

### D.    The Relators' Conspiracy Claims Have Been Waived

The SAC alleges that the Defendants violated 31 U.S.C. § 3729(a)(1)(C) for conspiring to commit a violation of 31 U.S.C. §§ 3729(a)(1)(A)-(B).  The District Court correctly ruled that the Relators' conspiracy claims must be dismissed because applicable case law does not support the Relators' allegations that the Defendants (corporate entities) could have conspired with their officers and agents as a matter of law.  (Add. 49-51.)  The Relators did not raise the District Court's conspiracy ruling in their statement of issues before this Court, nor did they make any arguments in the body of their brief regarding the conspiracy ruling, and thus

the Relators have waived their conspiracy claims. *Washington Legal Found. v. Massachusetts Bar Found*., 993 F.2d 962, 970 n.4 (1st Cir. 1993) (ruling that claims not included in statement of issues have, on appeal, been abandoned and are waived); *Brown*, 891 F.2d at 352  (holding that a party abandoned an issue by failing to argue the point in its briefs); *Ortega Cabrera*, 562 F.2d at 102  (holding that failure to argue an issue on appeal is treated as having waived any such claim). First Circuit precedent thus mandates that the District Court's conspiracy ruling be affirmed.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE RELATORS' INFORMAL AND BOILERPLATE REQUEST FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Although Rule 15(a)(2) states that a "court should freely give leave when justice so requires," the rule does not mean that every request for leave to amend must be granted. *See, e.g.*, *Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (noting that Rule 15(a) "does not mean . . . that a trial court must mindlessly grant every request for leave to amend") (internal citations omitted).  A district court may deny a party's request for leave to amend on grounds that include undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, or futility of amendment. *Rost*, 507 F.3d at 733 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The First Circuit reviews the denial of a request for leave to amend for abuse of discretion. *Kelly*, 827 F.3d at 10; *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 116 (1st Cir. 2010). An abuse of discretion will only be found when the court is "left with a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached without weighing all the relevant factors." *Ahmed v. Rosenblatt*, 118 F.3d 886, 891 (1st Cir. 1997). The district court enjoys "significant latitude in deciding whether to grant leave to amend" and this Circuit will "defer to the district court's decision 'if any adequate reason for the denial is apparent on the record.'" *Kelly*, 827 F.3d at 10 (quoting *LaRocca v. Borden, Inc.*, 276 F.3d 22, 32 n.9 (1st Cir. 2002)); *see also United States ex rel. Wilson v. Bristol-Myers Squibb*, 750 F.3d 111, 119 (1st Cir. 2014) ("We defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial [of the motion to amend]." (internal citations omitted)).

## A. The District Court's Opinion Reflects Adequate Reasons for Denying the Relators' Boilerplate Request for Leave to Amend on the Basis of Undue Delay

In its February 2, 2016 order, the District Court issued a well-reasoned decision and provided adequate reasons for denying the Relators' boilerplate requests for leave to amend. As the District Court found, more than four years had passed between the filing of the Relators' original complaint and their request for

41

leave to file a Third Amended Complaint. The Relators filed their original complaint in this case on May 18, 2012. (Add. 61.) The Relators filed a FAC under seal on December 2, 2013. (Add. 53.) On June 5, 2015, the District Court granted, over the Defendants' objections, the Relators' motion to amend the FAC and file a SAC. (R. 133.) The Defendants filed their motion to dismiss the SAC on June 29, 2015 and the Relators, rather than file a motion for leave to amend, litigated the motion to dismiss. (R. 145, 146, 152, 153, 159, 166.) The District Court issued an order granting Defendants' motion to dismiss and denied the Relators' request for leave to amend the SAC on February 2, 2016. (Add. 1.)

The District Court expressly relied on these delays in reaching its decision, finding that the Relators' request for leave to amend was filed:

(1) more than four years after the Relators filed the initial suit;

(2) more than three years after the Relators filed the FAC;

(3) more than one year after the Relators filed the SAC; and

(4) after the Relators vigorously litigated the defendants' motion to dismiss the SAC.

(Add. 53-54.) In its decision, the District Court relied on this Circuit's precedent that the party requesting leave to amend has the burden of showing a valid reason for the neglect and delay. (Add. 55-56.) In analyzing what constitutes an unacceptable delay in requesting leave to amend, the District Court recognized that

the First Circuit has "previously labeled as 'considerable time' warranting explanation, periods of fourteen months, fifteen months, and seventeen months." *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citing *Grant v. News Grp. Bos., Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (fourteen months)); *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51-52 (1st Cir. 1998) (fifteen months); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983) (seventeen months).  (Add. 56.)

In all of the Relators' cursory and boilerplate requests for leave to amend, the Relators never articulated a single reason for their delay.[18]  This Circuit's

---

[18]  The four haphazard requests made by the Relators to amend their complaint were all made subject to the District Court granting the Defendants' motion to dismiss, and the first two requests simply stated the exact same boilerplate language.  Not once did the Relators actually request leave to amend or suggest that they were prepared to amend their complaint prior to the District Court's decision on the motion to dismiss.  The Relators' four passing references state as follows: (1) "For all the foregoing reasons, Defendants' motion to dismiss the SAC should be denied.  In the alternative, Relators should be granted leave to amend insofar as it may be necessary to plead additional facts to meet the standards of Rule 12(b)(6) and/or 9(b)" (R. 153-1 at 34); (2) "For the foregoing reasons, Defendants' Motion to Dismiss should be denied. In the alternative, Relators should be granted leave to amend insofar as it may be necessary for Relators to plead additional facts in their possession or through further investigation to meet the standards of Rule 12(b)(6) and/or Rule (9)" (R. 166 at 12); (3) "As argued in their briefing on the motion to dismiss, Relators contend that the SAC satisfies applicable pleading standards in the First Circuit.  Should the Court determine it does not, however, Relators are prepared to file a Third Amended Complaint to cure any perceived deficiencies" (R. 172-1 at 7 n.5); and (4) "Relators maintain that Defendant's motion to dismiss should be denied in its entirety.  However, Relators respectfully submit that should this court grant Defendants' motion in any part, then under *D'Agostino*, the Court should grant Relators' leave to amend." (R.

precedent makes clear that the Relators must do more than make informal requests for leave to amend without providing any substantive basis underlying the request. Here, the Relators' informal requests for leave to amend fall short of "[the First Circuit's] oft-quoted maxim that litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." *Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 107 (1st Cir. 2013); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Accordingly, the District Court was well within its discretion to determine that the Relators failed to demonstrate a "legitimate reason for their neglect and delay" and to deny their request for leave to amend the SAC and file a third amended complaint. (Add. 56.) The District Court, in reliance upon *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983), found that allowing relators to file a fourth complaint here after fully litigating the issues raised by the motion to dismiss, "would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's

---

172 at 2). None of these requests came close to a substantive and meaningful motion for leave to amend. In addition, the Defendants reserved the right to challenge the Relators' TAC at a motion to dismiss stage in the event that the District Court permitted the Relators' request for leave to file a TAC. (R. 187 at 15 n.10).

decision.  Such a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances."  (Add. 54-55.)  The District Court's February 2, 2016 decision carefully accounted for the procedural history of the case and its decision was grounded in First Circuit precedent.  The District Court did not abuse its discretion and its decision should be affirmed.

### B.  The First Circuit Does Not Require a Separate Finding of Prejudice to Support the Denial of a Request for Leave to Amend Based on Undue Delay

The Relators' argument that "[p]rejudice is the touchstone" of an inquiry regarding whether leave to amend should be granted and that "undue delay is not sufficient grounds to deny leave absent prejudice or bad faith" is a profoundly incorrect interpretation of First Circuit law.  Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.  *See, e.g.*, *United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 195 (1st Cir. 2015) ("[T]here are myriad reasons that might justify the denial of a motion for leave to amend, including undue delay, repeated failure to cure deficiencies, or futility."); *Pérez v. Hosp. Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014) (holding that undue delay, even alone, may be an adequate reason to deny a motion to amend); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 343 (D. Mass. 2015) (stating that "[i]n the First Circuit, it is well-

45

established that 'undue delay in moving to amend, even standing alone, may be . . . an adequate reason [to deny a motion for leave to amend].'" (quoting *In re Lombardo*, 755 F.3d at 3)).[19]

Once again, the Relators ask this Court to rewrite First Circuit precedent. Their request must be denied.

## III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE RELATORS' MOTION FOR RECONSIDERATION BECAUSE THE RELATORS FAILED TO EXPLAIN THEIR DELAY IN DISCOVERING NEW EVIDENCE

The Relators moved under Federal Rules of Civil Procedure 59(e) and 60(b)(2) to set aside the District Court's order denying the Relators leave to file a third amended complaint.  (J.A. 811.)  The proper standard of review for a district court's decision whether to grant a Rule 59(e) and Rule 60(b) motion is an abuse of discretion standard.  *Nat'l Metal Finishing Co. v. Barclays American Commercial, Inc.*, 899 F.2d 119, 125 (1st Cir. 1990); *Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009).  A district court does not abuse its discretion by denying a Rule 59(e) motion for reconsideration based on the discovery of evidence that, in the exercise of due diligence, could have been presented earlier.  *Emmanuel v. Int'l*

---

[19]   Even though undue delay by itself is an adequate basis to deny a request for leave to amend, the record shows that the District Court did find that permitting the Relators to file a TAC would be prejudicial to the court and the Defendants. The District Court found that "Justice would not be served by granting relators' request to file a third amended complaint; rather, such a grant would prejudice the defendants and incentivize future unfair amendment tactics." (Add. 55.)

*Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005). Similarly, this Circuit will not overturn a district court's denial of a Rule 60(b) motion unless "a miscarriage of justice is in prospect or the record otherwise reveals a manifest abuse of discretion." *Ruiz Rivera v. Riley*, 209 F.3d 24, 27 (1st Cir. 2000); *see also Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir. 1987) ("We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory.").

Motions for reconsideration under Rule 59(e) are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust. *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). A Rule 59(e) motion is rightfully denied by the district court where the moving party could have obtained, through due diligence, the relevant information prior to the entry of judgment. *Biltcliffe v. CitiMortgage, Inc.,* 772 F.3d 925, 931 (1st Cir. 2014). To avoid this fate, the moving party "must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006).

Rule 60(b)(2) permits a court to relieve a party from a final judgment or order if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Motions invoking this rule should be granted only under "exceptional circumstances." *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir. 1986) (finding that the district court did not abuse its discretion in denying a Rule 60(b) motion when the movant offered no explanation for the lateness of the "new evidence"). A party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings. *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19-20 (1st Cir. 2002). An unexcused failure to produce the relevant evidence before the entry of judgment is sufficient grounds for denial of a Rule 60(b) motion. *Lepore,* 792 F.2d at 274.

Thus, under both rules, the Relators need to show that the "newly discovered evidence" alleged in their proposed TAC could not have been previously discovered through reasonable diligence. The District Court noted that the Relators offered "two principal explanations for why the evidence was previously undiscoverable, even with the appropriate level of diligence." (Add. 64.) First, the Relators argued that the MDL confidentiality orders prevented them from pleading in the SAC information that they had obtained from those proceedings. (Add. 64.)

Second, the Relators argued that the sealed status of the SAC hindered their ability to investigate false claims and obtain information from MDL plaintiffs' counsel, surgeons, and Pinnacle MoM patients themselves. (Add. 64-65.) Upon review of the Relators' proposed third amended complaint, the District Court found that "newly discovered evidence should have, with the appropriate investigative diligence, been discovered and presented earlier in the proceeding . . . not only in their first or second amended complaints, but also in their original complaint filed four years ago." (Add. 65.)

In reaching its decision that the MDL confidentiality orders did not prohibit the Relators from investigating information about false claims, the District Court first found that the MDL confidentiality orders are still in effect and therefore "any new information in the proposed third amended complaint has not suddenly become discoverable because of changes in the MDL confidentiality orders." (Add. 65.) The MDL confidentiality orders prohibit – to this day – the Relators' use of confidential documents, but not the facts that underlie those documents.[20] Indeed, as the District Court found, much of the basic investigative legwork was

---

[20] The Relators argue that the District Court improperly accorded weight to its own post-hoc interpretation of the MDL confidentiality orders. (Relators' Brief 54-55.) This argument is without merit. The District Court did not analyze whether documents fell within the scope of the orders; rather, it simply acknowledged the fact that the orders themselves did not prohibit the Relators from utilizing the underlying facts in pursuing additional information to bolster their FCA claims.

already performed by the thousands of MDL plaintiffs and their attorneys and was available to the Relators via publicly available complaints.[21] (Add. 65.)

Second, the District Court found that the sealed status of the SAC did not prohibit the Relators from properly investigating their case. The District Court emphasized that the SAC was sealed because the Relators previously had violated the ASR MDL confidentiality order.[22] (Add. 66.) Furthermore, the Relators failed to explain why they did not review the thousands of publicly available complaints to identify situations in which a government payor had paid for a Pinnacle MoM implant. (Add. 67.)

The District Court highlighted two examples wherein the Relators could have ascertained key information from publicly available sources. First, the District Court refuted the Relators' claim that they did not know that Patient 4, identified in their proposed third amended complaint, was a veteran – and thus

---

[21]  The Relators argue that the District Court improperly suggested that they violate the public disclosure bar, 31 U.S.C. §3730(e)(4), by utilizing publicly available complaints to satisfy Rule 9(b). (Relators' Brief 44 n.9.) Again, this argument is without merit. The Relators themselves relied upon the publicly available testimony of Patient 4 to excuse their delay in producing "newly discovered evidence" and the District Court simply pointed out that had they reviewed Patient 4's complaint, they would have learned the same information more than four years ago. (Add. 68.)

[22]  During the March 18, 2015 hearing before the District Court, Judge Saylor stated that with respect to the FAC's seal, "the relators created the issues." (J.A. 65.) The problems encountered by the Relators related to the FAC and SAC seals are of their own making and they must live with the consequences that come with violating a federal court order.

likely to have his hip replacement paid for by the federal government – until he testified during a public MDL hearing on February 10, 2016.  (Add. 68.)  The District Court correctly pointed out that Patient 4 identified himself in his complaint, dated August 5, 2011, as a "30 year U.S. Navy veteran" who received a Pinnacle MoM with an Ultamet liner on January 19, 2005.  (Add. 68.)  The District Court stated that the Relators could have attempted to contact Patient 4's counsel before the initial, much less the third, complaint in this action.  Second, the District Court pointed out that yet another publicly available MDL complaint, filed on November 14, 2011, identified a plaintiff who was implanted with a "Pinnacle Hip" on October 20, 2009 at a VA hospital in Seattle, Washington by Dr. Howard Chansky.  (Add. 68.)  The District Court faulted the Relators for not contacting Dr. Chansky or the plaintiff's counsel to determine whether the plaintiff was implanted with a Pinnacle MoM device (as suggested by paragraph 28 of his complaint), and whether his device was paid for by the federal government (as suggested by the fact that the procedure occurred in a VA hospital).[23] (Add. 68.)

---

[23]  As articulated in the Defendants' Opposition to Relators' Motion for Reconsideration, within a twenty-four hour period, the Defendants identified fourteen publicly available complaints that provided the names of physicians who implanted Pinnacle MoM devices in MDL plaintiffs, as well as the patients' date of birth (suggesting that the patient was over the age of sixty-five and, thus, likely to have received Medicare), and a surgery that was performed at a VA hospital (suggesting that the patient's surgery likely was reimbursed by the federal government).  (R. 187 at 11.)  Defendants offered, if the District Court requested,

In a further example of the Relators' failure to exercise reasonable diligence, the District Court also found that the Relators, as orthopedic surgeons themselves, were uniquely positioned to call other doctors and ask simple questions that did not violate patient privacy rights. The District Court provided examples of such questions in its decision denying the motion for reconsideration. For example, "Have you implanted a DePuy Pinnacle MoM device? When? How old was the patient? How was the device paid for? What types of marketing materials did you receive from DePuy? Did those affect your decision to use the Pinnacle MoM for your patient? What were the results of the surgery?"[24]  (Add. 67 n.6.)  As self-described world-renowned orthopedic surgeons, the Relators were uniquely

---

to provide many more examples of complaints that provided similar information. (R. 187 at 12 n.8.)

[24]  The Relators claim that "numerous surgeons identified in Pinnacle MDL complaints were unwilling to disclose information crucial to satisfy *Leysock's* gloss on Rule 9(b) without seeing the SAC." (Relators' Brief 60.) This claim is contradicted by the record. The Relators' counsel stated in the Declaration of Ross B. Brooks in Support of Relators' Reply in Further Support of their Motion for Reconsideration and for Leave to Amend that <u>only one</u> surgeon "wanted to know more information about the *qui tam* litigation before he agreed to speak" with the Relators. (R. 189-1 at 3, Add. 1206.) In addition, as discussed *infra* at footnote twelve, the Relators' suggestion that *Leysock* applies a "gloss" on the Rule 9(b) pleading standards is unfounded. *Leysock* simply applied the standards set forth in *Duxbury I*, which the First Circuit decided in 2009. As the District Court stated in its February 2, 2016 opinion, the Relators had ample notice of the Rule 9(b) pleading standards articulated by the First Circuit in *Duxbury*. (App. 66 n.5.) Even so, *Leysock* was decided in October 2014 and the Relators had over seven months to draft their SAC in light of *Leysock*. Thus, the Rule 9(b) standards that the Relators had to satisfy were well-known and long-established since the inception of this case.

positioned to contact other orthopedic surgeons and ask these seemingly basic questions.

Simply put, the Relators impermissibly used confidential documents provided to them, in their capacity as expert witnesses in one of the MDL matters, to draft their *qui tam* complaint. The Relators then requested that the FAC be placed under seal to avoid violating the MDL confidentiality orders,[25] which the Relators willingly entered into to serve as expert witnesses in the MDL cases. Now, three years later, the Relators claim that the seal and the MDL confidentiality orders prevented them from properly investigating the allegations set forth in their *qui tam* complaint. The Relators should not be permitted to hide behind the seal in order to avoid violating the MDL confidentiality orders only to later complain about the seal when they believe it is to their tactical advantage to do so. Furthermore, the Relators should not be permitted to argue that the MDL confidentiality orders impermissibly prevented them from engaging in due diligence, and then suddenly claim that they have discovered the information necessary to survive Rule 9(b) as to a proposed third amended complaint when those very same orders are still in effect.

---

[25] After the United States had requested that Judge Talwani unseal the FAC, upon its declination decision, the Relators asked for it to remain under seal because it utilized information covered by the ASR MDL protective order, thus rendering the FAC tainted. The Relators did not request that the SAC seal be lifted until August 24, 2015. (R. 172.)

The Relators have had multiple opportunities to investigate and present the "newly discovered evidence" that accompanied their motion for reconsideration. Rather than seek to plead a sufficient complaint, the Relators have engaged in amendment gamesmanship. Ignoring a plethora of publicly available complaints that could have led the Relators to certain information, the Relators instead have opted to litigate what is essentially a products liability complaint, not an FCA complaint.  (Add. 68.)  The District Court had more than an adequate basis for the denial of the Relators' motion for reconsideration and its decision should therefore be affirmed.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court affirm the District Court's decision that the Relators' SAC failed to satisfy Rule 9(b)'s pleading requirement and affirm that the District Court did not abuse its discretion in denying the Relators' request for leave to file a third amended complaint.

Respectfully submitted,

DEFENDANTS-APPELLEES
DEPUY ORTHOPAEDICS, INC., DEPUY,
INC., JOHNSON & JOHNSON,
SERVICES, INC.
By their attorneys,

*/s/ Mark Seltzer.*
Mark D. Seltzer, Esq.
(1st Cir. No. 1127668)
D. Danielle Pelot, Esq.
(1st Cir. No. 1174964)
Hannah R. Bornstein, Esq.
(1st Cir. No. 1174965)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because this brief contains 13,924 words, excluding the parts of the brief that are exempted by Federal Rules of Appellate Procedure 32(a)(7)(B)(iii). In making this assertion, I have relied upon the word count of the word processing program used to prepare this brief.

2.    This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface in Microsoft Word using Times New Roman 14 point font.

Dated: Boston, Massachusetts    **NIXON PEABODY LLP**
September 26, 2016

By: *<u>/s/ Mark D. Seltzer.</u>*
    Mark D. Seltzer, Esq.
    (1st Cir. No. 1127668)
    D. Danielle Pelot, Esq.
    (1st Cir. No. 1174964)
    Hannah R. Bornstein, Esq.
    (1st Cir. No. 1174965)
    NIXON PEABODY LLP
    100 Summer Street
    Boston, Massachusetts 02110
    Telephone: (617) 345-1000
    Facsimile: (617) 345-1300

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2016, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

George Bunker Henderson, II
Dina Michael Chaitowitz
Office of the United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Kevin M. Kinne
Christopher M. Hennessey
Cohen Kinne Valicenti & Cook, LLP
28 North Street, 3rd Floor
Pittsfield, Massachusetts 01201

David W. Sanford
Ross B. Brooks
Russell L. Kornblith
Sanford Heisler, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019

D. Danielle Pelot
Hannah R. Bornstein
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110

*/s/ Mark D. Seltzer*
Mark D. Seltzer